ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 25, the records from the Cuyahoga County Court of Common Pleas, and the parties' briefs.
 {¶ 2} Defendant-appellant Derrick Wheatt[1] appeals the trial court's denial of his motion for leave to file a second motion for a new trial. For the reasons set forth below, we affirm.
 {¶ 3} In 1996, appellant and his co-defendants, Laurese Glover and Eugene Johnson, were convicted of the murder of Clifton Hudson. This court subsequently affirmed all three defendants' convictions. State v. Wheatt (Jan. 16, 1997), Cuyahoga App. No. 70197; State v. Glover (Jan. 16, 1997), Cuyahoga App. No. 70215; State v. Johnson (Jan. 16, 1997), Cuyahoga App. No. 70234.
 {¶ 4} The facts, as stated by this court in appellant's first appeal, are as follows:
 {¶ 5} "The state's evidence established that on Friday, February 10, 1995, Clifton Hudson, Jr. was murdered while walking on Strathmore Avenue in East Cleveland, Ohio. His death was caused by multiple gunshot wounds from one or more firearms, which caused him to bleed to death. The coroner ruled his death a homicide.
 {¶ 6} "Tamika Harris, age fourteen, witnessed the murder. She and her friend Monique were walking home on Strathmore Avenue about 5:45 p.m. when they heard a volley of two or three gunshots. Monique turned and ran, but Ms. Harris saw the shooter come around from the back of a black Blazer-type truck, stand in the street, and shoot Clifton Hudson as he was standing on the sidewalk. She testified that the person whom she saw shoot the victim had a black gun `larger than a .25.' She then heard three to five more shots and saw Hudson fall to the ground. After the shots were fired, the truck went south and made a right on Manhattan, almost hitting another car. The shooter, whom she later identified as Eugene Johnson, ran past her. She was able to see him clearly as it was still light outside. She said Johnson ran toward the truck, and it slowed down. Although she did not see Johnson get into the truck, after the truck sped away, she did not see Johnson again. The truck then turned left on Ardenall. She was able to see two `black' people in the front seat of the truck. She then went over to the victim, heard him request, `Help,' and saw his eyeballs roll back into his head.
 {¶ 7} "Patrolman Tavano of the East Cleveland Police Department responded to the murder scene and interviewed Reginald Longino, Mike Wilson and Eric Reed, who were there. Although each stated he heard the shots, each man, including Eric Reed, told Ptl. Tavano that he did not see anything. When Ptl. Tavano spoke to Ms. Harris, however, he realized that she had pertinent information regarding the incident, and he directed her to the detectives. Ms. Harris gave a statement to the East Cleveland police that same evening regarding what she had witnessed, including her description of the black 4x4 truck, the shooter being of medium complexion and over 5'7", and the shooter's clothing, which she described as a `red and blue Tommy Hilfiger coat, black skully, and black pants.'
 {¶ 8} "Later that evening, Ptl. Tavano observed the suspect truck in the driveway at 1836 Knowles, about one-half mile from the scene of the murder. He then called the detectives, who went to the Knowles address. They subsequently followed the truck to Ardenall, where they arrested the defendant and the co-defendant, Laurese Glover. At the time of his arrest, defendant was wearing his Cleveland Indians jacket. The black 4x4 GMC truck was taken to the police garage. In the presence of their parents, defendant and Laurese Glover each gave a statement to the police. Later during the night, co-defendant Eugene Johnson was arrested and, in the presence of his mother, made his statement to the police. When arrested, Johnson was wearing his blue, green and maroon Nautica down jacket over a black hooded sweatshirt. A pair of gloves was found in his jacket pocket.
 {¶ 9} "Detective Johnstone testified as to the oral statements made by Derrick Wheatt and his co-defendants to the police. In each of these statements, Wheatt and his co-defendants stated that while they were in the black truck on Strathmore at the time of the murder, Glover was driving, defendant Wheatt sat in the front passenger seat, and Johnson sat in the back seat. Each stated that he witnessed the murder of Hudson by a thin, light-skinned black man. Defendant Wheatt and Glover noted the shooter as wearing a blue jacket; Johnson, however, stated the shooter's jacket was brown.
 {¶ 10} "The day after the murder, Ms. Harris returned to the East Cleveland Police Station, where she identified the black 4x4 truck as the one she saw during the murder. She identified Johnson's black hooded sweatshirt and his Nautica down jacket as the clothing worn by the shooter whom she had seen. The Nautica jacket was similar in color and description to the one described in her statement the evening before that she misidentified as a `Tommy Hilfiger jacket.' When Detective Perry showed her photographs of defendant Wheatt and co-defendants Glover and Johnson, she immediately picked the photograph of Eugene Johnson as the shooter. Detective Perry testified that the police did not direct Ms. Harris's identification of the shooter, of his clothes, or of the black 4x4 truck.
 {¶ 11} "At the request of the East Cleveland police, co-defendant Glover's 4x4 truck was processed for gunshot residue. he Ohio Bureau of Criminal Investigation determined that lead residue consistent with a firearm having been fired was found on the exterior passenger-side door below the window, the interior passenger-side door armrest, and the front passenger seat bottom.
 {¶ 12} "The hands of each of the subjects, including defendant Wheatt, were swabbed by the East Cleveland police during the night of their arrest for atomic absorption testing. The findings from both sides of both hands of defendant Wheatt were positive for antimony and barium, consistent with gunshot residue. The state's expert concluded that such findings indicate that the defendant either fired a weapon or that his hands were `very, very close' to a weapon as it was fired. The hands of each of the two co-defendants were found negative for gunshot residue. Defendant Wheatt's Cleveland Indians jacket was analyzed and found to have nitrite particles on the left sleeve consistent with its being exposed to gunshot residue. The jacket of co-defendant Johnson did not have a positive reaction to the testing; however, the test result on the palm of his left glove was consistent with gunshot residue. The results of the test on the right palm were inconclusive, and results of the test on the backs of the gloves were negative." Wheatt, supra, at 1-8.
 {¶ 13} In affirming Wheatt's conviction, this court stated the following:
 {¶ 14} "Further, we do not see the conviction of appellant as being grounded in Ms. Harris's identification of the co-defendant, Johnson. It is uncontroverted that the appellant was on the scene of the murder, in the black truck, sitting in the front passenger seat. * * * [T]he state presented uncontradicted evidence to establish that gunshot residue was found below the window of the passenger side of the truck where appellant was sitting, on the appellant's hands, and on the appellant's jacket sleeve." Id. at 15-16.
 {¶ 15} In 2004, co-defendant Johnson filed a motion for a new trial after Harris averred in an affidavit that her identification of him was in error. Specifically, Harris stated that she identified Johnson solely based on the jacket he was wearing in the photo. The trial court granted Johnson's motion, and the State appealed. Appellant subsequently filed leave to file his second motion for a new trial.[2] In his motion for leave, appellant maintained that "[i]n that this Court has already entertained such [motion for a new trial] for Mr. Johnson and granted such it seems only fair and in the interest of justice that the two remain[ing] passengers in Mr. Johnson's vehicle be afforded the same consideration." The trial court denied appellant's motion as being barred by the doctrine of res judicata. Appellant now contends that the trial court erred in applying res judicata to his claim set forth in his second motion for a new trial.
 {¶ 16} This court recently reversed the trial court's judgment granting Johnson's motion for a new trial. State v.Johnson, Cuyahoga App. No. 85416, 2005-Ohio-3724.
 {¶ 17} The legal criteria that must be met before granting a new trial based upon newly discovered evidence was enunciated by the Supreme Court of Ohio in State v. Petro (1947),148 Ohio St. 505, 76 N.E.2d 370, as follows.:
 {¶ 18} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."
 {¶ 19} As previously mentioned, in affirming appellant's conviction, this court held that Wheatt's conviction was not grounded in Harris's identification of Johnson. Specifically, this court noted that the forensic evidence, namely, the gunshot residue found where appellant had been sitting in the vehicle and the gunshot residue on appellant's and clothing, along with the fact that appellant was undeniably at the scene, was competent, credible evidence to sustain the conviction. Thus, in essence, this court has already ruled that the alleged "newly discovered evidence" does not present "a strong probability that it will change the result if a new trial is granted," the first prong of the Petro test.
 {¶ 20} Moreover, the grounds upon which appellant's motion for leave to file his second motion for a new trial (e.g., fairness because the trial court granted Johnson's motion for a new trial) is moot given this court's ruling reversing the trial court's judgment granting Johnson a new trial.
 {¶ 21} Accordingly, we find appellant's assignment of error without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Blackmon, J., Concur.
[1] We note that some documents in the record spell appellant's surname "Wheatt," while others spell it "Wheat." In appellant's first appeal, this court noted that the correct spelling is "Wheatt."
[2] Appellant's first motion for a new trial, based upon a claim of newly discovered evidence, was filed in 1999, and claimed that defense counsel failed to present material witnesses.