[Cite as *State v. Glover*, 2014-Ohio-3228.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 100330 and 100331**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAURESE GLOVER AND DERRICK WHEATT

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-95-324431-B and CR-95-324431-C

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 24, 2014

**ATTORNEYS FOR APPELLANTS**

Donald Caster
Terence R. Brennan
Mark A. Godsey
Brian Howe
Ohio Innocence Project
University of Cincinnati
P.O. Box 210040
Cincinnati, Ohio 45221


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    James M. Price
          Daniel T. Van
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} For purposes of this opinion, the appeals of both appellants, Laurese Glover and Derrick Wheatt have been consolidated.[1]

{¶2} In this consolidated appeal, appellants Laurese Glover ("Glover") and Derrick Wheatt ("Wheatt")[2] (collectively "appellants"), appeal the denial of their petition for postconviction relief. We find no merit to the appeal and affirm.

{¶3} In January 1996, appellants, along with codefendant Eugene Johnson ("Johnson"), were convicted of murder in connection with the shooting death of Clifton Hudson ("Hudson"). Appellants were juveniles at the time of the murders and were bound over to the common pleas court pursuant to Juv.R. 30, where they were tried and sentenced as adults.

{¶4} The evidence showed that Hudson, who was 19 years old, was shot to death on February 10, 1995, on Strathmore Avenue in East Cleveland. Tamika Harris ("Harris"), who was 14 years old at the time of the murder, was the state's chief eyewitness. Harris testified that she and a girlfriend were walking southbound on Strathmore Avenue approaching an overpass at approximately 5:45 p.m. when they heard two gunshots. Harris looked under the bridge and observed a young man come from behind a black Chevy Blazer type truck that was stopped on Strathmore and shoot the

---

[1] *See* journal entry dated September 10, 2013.

[2] Some documents in the record spell appellant's surname "Wheatt," while others spell it "Wheat." In appellant's first appeal, this court noted that the correct spelling is "Wheatt."

victim three or four more times. After the shooting, the Blazer sped down Strathmore, under the bridge, and turned right on Manhattan Avenue, almost hitting another car. The shooter, who was running after the Blazer, ran past Harris, and the Blazer slowed down. The shooter approached the Blazer and disappeared behind it. Although Harris did not see the shooter get into the Blazer, she assumed he entered the vehicle because she did not see him again after it sped away a second time.

{¶5} Harris talked to police at the scene and made a written statement later that night at the East Cleveland police station. Harris told police the shooter had a medium complexion, was taller than 5'7", and was wearing "a red and blue Tommy Hilfiger coat, black skully, and black pants." When police asked Harris if she could identify the male she saw firing the gun, she replied, "No, I didn't see his face that clear." Despite that, the day after the murder, she identified Johnson as the shooter from a photo array. She also identified Johnson's hooded sweatshirt and Nautica down jacket as the shooter's clothing, and the black Blazer as the one she had seen on Strathmore at the time of the murder. The Nautica jacket was similar to the down Tommy Hilfiger jacket she described in her previous statement. Detective Michael Perry ("Perry") testified that the police did not direct Harris's identification of the shooter, his clothes, or the Blazer, though there was only one black Blazer in the police garage.

{¶6} Wheatt, Glover, and Johnson were arrested within hours of the shooting. Johnson was wearing a blue, green, and maroon Nautica down jacket over a black hooded sweatshirt at the time of his arrest. In the presence of their parents, they each gave a

statement to police and independently conveyed the same story that they were in the black Blazer on Strathmore at the time of the shooting and happened to witness the murder. They each stated that the shooter was a thin, light-skinned black man. Wheatt and Glover indicated the shooter was wearing a blue jacket. Johnson, however, stated the shooter's jacket was brown.

{¶7} The Ohio Bureau of Criminal Investigation processed the Blazer for gunshot residue. There were no firearms found in the vehicle but forensic scientists found lead particles on the exterior passenger-side door below the window, the interior passenger side door armrest, and the front passenger seat bottom. An expert at trial testified that the lead particles were consistent with gunfire.

{¶8} Detective Vincent Johnstone ("Johnstone") testified that he conducted an atomic absorption spectroscopy test ("AAS test") on Wheatt and Johnson around 2:00 or 3:00 a.m. after they were in police custody on February 11, 1995. Johnstone swabbed their hands with a Q-tip swab and sent the swabs, along with ones from Johnson, to the Cuyahoga County Coroner's Office. Both sides of both of Wheatt's hands were positive for antimony and barium. Based on this evidence, the state's expert concluded that Wheatt either fired a weapon or that his hands were "very, very close" to a weapon as it was fired. The expert explained that the quantity of antimony and barium found on Wheatt's hands indicated it could not have come from any source other than gunshot residue. Johnson and Glover's hands were negative for gunshot residue. However, test results on the palm of Johnson's left glove was consistent with gunshot residue.

{¶9} The defense presented two witnesses. Leroy Malone ("Malone") testified he had known all three defendants since they were in kindergarten because they lived in the neighborhood. Malone was parking his car on Ardenall Avenue, one street over from Strathmore, when he heard five gunshots. He then observed a black Ford Bronco with tinted windows driving towards him with three men inside. There was a fourth man running behind the Bronco. Malone testified he could see the side of the man's face as he was running and that he was not Johnson, who was darker and taller. The man stopped, put something in his pants, and ran down Shaw Avenue. According to Malone, he never got into the vehicle.

{¶10} Eric Reed ("Reed") lived on Strathmore at the time of the murder. He stated that he was watching T.V. when he heard gunshots. He looked out the window and saw a man lying on the ground and another man going through his pockets. Reed described the man who was standing over the victim as a light skinned black male, about 5'11" in height, wearing a dark jacket with a hooded sweatshirt. He testified that none of the defendants resembled the man he saw. He also stated that he did not notice any vehicle on the street.

{¶11} All three defendants were found guilty of murder, sentenced to 15 years to life in prison, and remain incarcerated. Their convictions were affirmed on appeal. *State v. Glover*, 8th Dist. Cuyahoga No. 70215, 1997 Ohio App. LEXIS 98 (Jan. 16, 1997); *State v. Wheatt*, 8th Dist. Cuyahoga No. 70197, 1997 Ohio App. LEXIS 96 (Jan.

16, 1997); and *State v. Johnson*, 8th Dist. Cuyahoga No. 70234, 1997 Ohio App. LEXIS 100 (Jan. 16, 1997).

{¶12} Nevertheless, appellants have always maintained their innocence and claim they are victims of circumstance. In July 2004, Johnson filed a motion for a new trial based on Harris's recanted testimony, and the trial court granted him a new trial in September 2004. In November 2004, appellants each filed a motion for leave to file motion for new trial, arguing they were also entitled to a new trial based on Harris's recanted testimony. At a hearing on the motions for new trial, Harris testified that she improperly identified Johnson as the shooter because the photo array presented by police was unduly suggestive.

{¶13} While appellant's motions for a new trial were pending, this court reversed the trial court's judgment granting Johnson a new trial. *State v. Johnson*, 8th Dist. Cuyahoga No. 85416, 2005-Ohio-3724. The trial court subsequently denied appellants' motions for a new trial. In affirming the trial court's judgment denying Wheatt's motion for new trial, this court explained that "Wheatt's conviction was not grounded in Harris's identification of Johnson." *State v. Wheatt*, 8th Dist. Cuyahoga No. 86409, 2006-Ohio-818, ¶ 19. This court explained that gunshot residue found where Wheatt had been sitting in the Blazer, and the gunshot residue on his hands and clothes, along with the fact that he was undeniably at the scene, was competent, credible evidence to sustain the conviction. *Id.*

**{¶14}** In January 2009, appellants obtained leave and filed another motion for new trial, asserting that recent advances in the forensic science of gunshot residue warranted a new trial. They argued newly discovered scientific evidence demonstrated that evidence of gunshot residue collected in their case was unreliable. The new method, known as Scanning Electron Microscopy/Energy Dispersive X-ray Spectroscopy (SEM/EDS), determines whether lead, barium, and antimony particles are fused or bonded together; not whether these elements are merely present at some level as under AAS. Appellants argued that in light of SEM/EDS testing, the state's expert could no longer testify to a reasonable degree of scientific certainty that the elements she tested under the AAS test are consistent with gunshot residue. The trial court denied the motion. In affirming the trial court's judgment, this court held that just because SEM/EDS testing is more accurate than AAS does not invalidate AAS testing. *State v. Wheatt*, 8th Dist. Cuyahoga No. 93671, 2010-Ohio-4120, ¶ 38; *State v. Glover*, 8th Dist. Cuyahoga No. 93623, 2010-Ohio-4112, ¶ 26.

**{¶15}** Appellants recently filed petitions for postconviction relief in federal court, which have also been denied. The district court found that appellants had not met the standard for "actual innocence." *Glover v. Morgan*, N.D. Ohio No. 1:12CV267, 2013 U.S. Dist. LEXIS 38947 (Mar. 4, 2013); *Wheat v. Bradshaw*, N.D. Ohio No. 1:12CV266, 2013 U.S. Dist. LEXIS 38948 (Mar. 4, 2013).

**{¶16}** In January 2013, appellants filed the petition for postconviction relief that is the subject of this appeal. In this petition, they argued that in *Martinez v. Ryan*, 566 U.S.

1 _, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), the United States Supreme Court recognized a new federal right to the effective assistance of postconviction counsel that allows them to challenge their convictions; that but for constitutional error at trial, they would not have been found guilty. Following a hearing and additional briefing, the trial court denied the petition. The trial court determined that the new right recognized in *Martinez* does not apply to the facts of this case. Appellants now appeal and raise seven assignments of error.

## Standard of Review

{¶17} A postconviction relief proceeding is a collateral civil attack on a judgment that we review under the abuse of discretion standard. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48. The term "abuse of discretion" means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 15. It is "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *State v. Hancock*, 108 Ohio St.3d 57, 77, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

## Jurisdiction

{¶18} In the first assignment of error, appellants argue the trial court erred in holding that it could not consider their postconviction claims on the merits. They contend that under *Martinez*, they have the right to challenge their convictions because their postconviction counsel failed to effectively prosecute the appeal of the trial court's

denial of their motions for new trials based on Harris's recanted testimony, which was newly discovered evidence.

{¶19} Appellants have previously filed postconviction relief petitions. Therefore, the postconviction petition at issue here is a successive petition. Under R.C. 2953.23(A), a trial court may entertain a successive petition only under certain circumstances. Pursuant to R.C. 2953.23(A)(1), the trial court has jurisdiction over a successive petition if the petitioner establishes that "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation," and "[t]he petitioner shows by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted."

{¶20} Appellants contend that *Martinez* created a new constitutional claim for challenging a conviction based on the alleged ineffective assistance of postconviction counsel. In order to grasp the significance of *Martinez*, it is necessary to understand the background from which it evolved. In the late 1980s, the United States Supreme Court decided there is no federal constitutional right to the appointment of counsel in state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Since there was no constitutional right to the appointment of counsel, the Supreme Court later held in *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546,

115 L.Ed.2d 640 (1991), that there was no federal constitutional right to the effective assistance of counsel in postconviction proceedings.

{¶21} *Martinez* involved a petition for habeas corpus. Under 28 U.S.C. 2254, a person in custody pursuant to a state court judgment may challenge the conviction and sentence in federal court by applying for a writ of habeas corpus. Federal courts may only consider an application for a writ of habeas corpus on the ground that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. 2241(c)(3); 28 U.S.C. 2254(a). Federal courts may only grant relief for state violations of a federal law if the violation rises to the level of a "'fundamental defect, which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley*, 512 U.S. 339, 348, 114 S.Ct. 2291,129 L.Ed.2d 277 (1994), quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

{¶22} A prisoner must litigate federal law challenges to his conviction in state court before bringing them to federal court. *Coleman* at 731. The failure to assert claims in state court bars a prisoner from later litigating those claims in federal habeas proceedings because the prisoner failed to exhaust available state remedies. *Id.* This concept is known as "procedural default." However, a petitioner may overcome a "procedural default" by demonstrating "cause" and "prejudice." *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Prejudice caused by the

ineffective assistance of trial counsel meets this standard. *Martinez* at 1312, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶23} *Martinez* originated in Arizona where state law only permits ineffective assistance of counsel claims to be brought in state collateral proceedings rather than on direct appeal. *Id*. at 1314. Martinez's postconviction counsel filed a direct appeal and initiated a state collateral proceeding, but failed to present a claim for ineffective assistance of trial counsel in the state collateral proceeding. Instead, she filed a statement that, after reviewing the case, she found no meritorious claims for relief. *Id*.

{¶24} The state trial court hearing the collateral proceeding gave Martinez 45 days to file a pro se petition in support of postconviction relief and to raise any claims not alleged by counsel. Martinez failed to respond, apparently because his attorney failed to advise him of the need to file a pro se petition to preserve his rights. *Id*. As a result, the state court dismissed the action for postconviction relief. When Martinez filed a second petition for postconviction relief in the Arizona trial court, claiming his trial counsel was ineffective, the court denied Martinez relief on grounds that he failed to raise his ineffective assistance of counsel claims in the first collateral proceeding. *Id*.

{¶25} On federal habeas review, Martinez argued he received ineffective assistance of counsel at trial and in the first phase of his state collateral proceeding. *Id*. The state court's denial of his claims was based on a well-established procedural rule, which under the doctrine of procedural default, would prohibit a federal court from reaching the merits of his habeas claims. *Id*. However, Martinez argued he could

overcome the procedural defect "because he had cause for the default: His first postconviction counsel was ineffective in failing to raise any claims in the first notice of postconviction relief and in failing to notify Martinez of her actions." *Id*. Both the District Court and the Ninth Circuit Court of Appeals held that Martinez had not shown cause to excuse the procedural default because, under *Coleman*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640, prisoners have no federal constitutional right to the effective assistance of counsel in postconviction proceedings.

{¶26} However, *Coleman* "left open a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide *the first occasion to raise a claim of ineffective assistance at trial*." *Martinez* at 1315. (Emphasis added.) *Coleman* suggested, in dicta, that "the Constitution may require states to provide counsel in initial-review collateral proceedings because 'in [these] cases * * * state collateral review is the first place a prisoner can present a challenge to his conviction.'" *Martinez* at 1312, quoting *Coleman* 501 U.S. at 755, 111 S.Ct. 2546, 115 L.Ed.2d 640. In these circumstances, an initial-review collateral proceeding is a prisoner's "'one and only appeal' as to an ineffective-assistance claim." *Id.*, quoting *Coleman* at 756. The *Martinez* court explained that "when an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id*. at 1314-1315. And since a procedural default would preclude any habeas claim, the *Martinez* court concluded, "no court will review the prisoner's claim." *Id*. at 1316.

{**¶27**} For this reason, the Supreme Court qualified *Coleman* and held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Id.* at 1315. The court further held that, under state law, where claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.

{**¶28**} *Martinez* does not provide a free-standing constitutional right to the appointment of counsel in postconviction proceedings. Rather, it established an equitable doctrine for overcoming procedural default in certain limited circumstances. *Id.* at 1319-1320. The court was careful to point out that it was only recognizing a "narrow exception" to the holding in *Coleman* and explained:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons. (Citations omitted.)

*Id.* at 1320.

{**¶29**} In contrast to *Martinez*, the appellants in this case had the opportunity to, and did, assert ineffective assistance of trial counsel claims in their direct appeals. They also challenged the evidence presented at trial in subsequent motions for new trial and

petitions for postconviction relief, which have been reviewed by this court.[3] Nevertheless, they assert *Martinez* gives them the right to challenge their convictions on the basis of ineffective postconviction counsel because their postconviction lawyer failed to prosecute the denial of their motions for new trial on the basis of newly discovered evidence. They argue their postconviction counsel failed to prosecute their appeal beyond filing the brief and that a competent attorney would have demonstrated that Harris's recantation testimony revealed serious due process violations in the trial. Since Harris's recantation was newly discovered, they argue they are entitled to effective postconviction counsel as if it were their first appeal from trial because this issue could not have been adjudicated on direct appeal. They contend the prosecution of newly discovered evidence is no different from ineffective assistance claims that arise directly from trial. We disagree.

{¶30} As previously stated, the Supreme Court made clear that *Martinez* applies only to cases where defendants have been denied the effective assistance of counsel at the "initial review" stage of the litigation. *Martinez* at 1315. It expressly stated that it does not apply to successive collateral proceedings. *Id*. at 1320. Claims of newly discovered evidence may be brought, and often are brought, in successive collateral proceedings, which the *Martinez* court expressly excluded from its holding. *Id*.

---

[3] Although appellants' postconviction counsel failed to file a Table of Contents for their brief regarding Harris's recanted testimony, counsel filed a brief on the merits, which this court considered before rendering its decision on that issue.

**{¶31}** Furthermore, this is not a case where appellants have been denied a fair opportunity to challenge their convictions. Indeed, their convictions have been examined several times by multiple different courts.[4] Therefore, *Coleman*, not *Martinez*, applies here. Under *Coleman*, there is simply no federal constitutional right to the effective assistance of counsel in postconviction proceedings. *Coleman*, 501 U.S. at 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

**{¶32}** Accordingly, we overrule the first assignment of error.

**{¶33}** We have determined that appellants had no constitutional or equitable right to the effective assistance of counsel in their successive postconviction proceedings. Therefore, the remaining assigned errors, which relate to appellants's claims of newly discovered evidence that have previously been adjudicated in appellants' prior motions, petitions, and appeals, are moot and need not be addressed. *See* App.R. 12(A)(1)(c).

**{¶34}** Judgment affirmed.

---

[4] *See State v. Wheatt*, 8th Dist. Cuyahoga No. 70197, 1997 Ohio App. LEXIS 96 (Jan. 16, 1997) (direct appeal), *dismissed and discretionary appeal not allowed*, *State v. Wheatt*, 78 Ohio St.3d 1512, 679 N.E.2d 309 (1997) *reopening denied*; *State v. Wheatt*, 8th Dist. Cuyahoga No. 70197, 2002 Ohio App. LEXIS 491 (Jan. 31, 2002); *postconviction relief denied*, *State v. Wheatt*, 8th Dist. Cuyahoga No. 86409, 2006-Ohio-818; *postconviction relief denied, State v. Wheatt*, 8th Dist. Cuyahoga No. 93671, 2010-Ohio-4120; *magistrate's recommendation, habeas corpus proceeding*, *Wheat v. Bradshaw*, N.D. Ohio No. 1:12CV266, 2013 U.S. Dist. LEXIS 38948 (Mar. 4, 2013); *State v. Glover*, 8th Dist. Cuyahoga No. 70215, 1997 Ohio App. LEXIS 98 (Jan. 16, 1997) (direct appeal); *postconviction relief denied, State v. Glover*, 8th Dist. Cuyahoga No. 93623, 2010-Ohio-4112; *magistrate's recommendation, habeas corpus proceeding*, *Glover v. Morgan*, N.D. Ohio No. 1:12CV267, 2013 U.S. Dist. LEXIS 38947 (Mar. 4, 2013).

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR

**APPENDIX**

**Assignments of Error**

I.  The trial court erred in holding that it could not consider appellants' claims on the merits.

II.  The trial court erred in failing to hold that the state's failure to disclose the unduly suggestive conduct of police officers, both before and after the pretrial identification procedure conducted for witness Tamika Harris, constituted a violation of *Brady v. Maryland.*

III.  The trial court erred in failing to hold that the new evidence, which only became known during postconviction hearings in 2006, rendered the pretrial identification and subsequent in-court identification of Tamika Harris impermissibly suggestive in violation of appellants' due process rights under the U.S. Constitution.

IV.  The trial court erred in failing to hold that the state's failure to disclose impeachment material, specifically the conduct of police officers, both before and after the pretrial identification procedure conducted for witness Tamika Harris, constituted a violation of *Brady v. Maryland*.

V.   The trial court erred in failing to hold that appellants are actually innocent of Clifton Hudson's murder, and that their convictions are therefore violations of Amendments V, VIII, and XIV of the U.S. Constitution.

VI.   The trial court erred in failing to hold that the new evidence presented is so compelling that it would be a violation of fundamental fairness embodied in the due process clause of the U.S. Constitution not to afford appellants a new trial where such new evidence would be considered.

VII.   The trial court erred in failing to hold that the constitutional errors revealed in the postconviction proceedings, combined with the constitutional errors in the original trial, deprived appellants of a fair trial in violation of their due process rights under the U.S. Constitution.