[Cite as *State v. Waddy*, 2016-Ohio-4911.]

IN THE COURT OF APPEALS

TENTH APPELLATE DISTRICT OF OHIO

FRANKLIN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. 15AP-397 |
| | : | O P I N I O N |
| - vs - | : | |
| | : | |
| WARREN WADDY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FRANKLIN COUNTY COURT OF COMMON PLEAS
Case No. 86CR-3182

Ron O'Brien, Franklin County Prosecuting Attorney, Steven L. Taylor, 373 South High Street, Columbus, Ohio 43215, for appellee

Vicki R.A. Werneke, Assistant Federal Public Defender, 1660 West Second Street, #750, Cleveland, Ohio 44113, for appellant

**M. POWELL, P.J.**

{¶ 1}  Appellant, Warren Waddy, appeals a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a motion for new trial.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}  In 1987, appellant was sentenced to death following his conviction by a jury of aggravated murder and several other crimes.  This court affirmed appellant's sentence and

conviction on appeal. *State v. Waddy*, 10th Dist. Franklin Nos. 87AP-1159 and 87AP-1160, 1989 WL 133508 (Nov. 2, 1989) (*Waddy I*). Subsequently, the Ohio Supreme Court affirmed this court's decision. *State v. Waddy*, 63 Ohio St.3d 424 (1992) (*Waddy II*).

{¶ 3} On June 6, 1995, appellant filed a petition for post-conviction relief pursuant to R.C. 2953.21.[1] Appellant raised numerous claims for relief, including a claim he was mentally retarded.[2] The trial court dismissed appellant's petition without an evidentiary hearing, holding that res judicata barred appellant's mental retardation claim because it could have been raised on direct appeal. This court affirmed the trial court's decision. *State v. Waddy*, 10th Dist. Franklin No. 96APA07-863, 1997 WL 318032 (June 10, 1997) (*Waddy III*).

{¶ 4} Subsequently, the United States Supreme Court held that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishment. *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242 (2002). *Atkins*, however, did not establish procedures for determining whether a person is mentally retarded. Rather, the Supreme Court left it to the states to develop appropriate ways to implement *Atkins*. Consequently, in December 2002, the Ohio Supreme Court set forth the procedures Ohio now follows in adjudicating a capital defendant's *Atkins* claim. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625.

{¶ 5} *Lott* set forth a three-prong test for determining a defendant's mental retardation claim under *Atkins*. Whether asserting the claim in a post-conviction context or during the original trial, a defendant must demonstrate "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication,

---

1. The record does not explain why this post-conviction relief petition was filed under R.C. 2953.21, and not under R.C. 2953.23, as it was clearly untimely filed.

2. This court notes that the United States Supreme Court has recently chosen to substitute the term "intellectual disability" for "mental retardation." *Hall v. Florida*, 134 S.Ct. 1986, 1990 (2014). While this court agrees that sensitivity is due in any discussion of mental disabilities, the Ohio Revised Code and the records in this case use the term "retarded." Thus, for clarity, this court shall do so also, but no pejorative connotation from such use is

self-care, and self-direction, and (3) onset before the age of 18." *Lott* at ¶ 12. The Ohio Supreme Court held that "[w]hile IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination." *Id.* Further, "there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." *Id.*

{¶ 6} On May 30, 2003, appellant filed a second petition for post-conviction relief, alleging once again he was mentally retarded and thus, ineligible for the death penalty pursuant to *Atkins* and *Lott.* The trial court dismissed appellant's petition without an evidentiary hearing. On appeal, this court reversed and remanded, finding appellant was "entitled to an evidentiary hearing and funding for an expert to develop his *Atkins* claim." *State v. Waddy*, 10th Dist. Franklin No. 05AP-866, 2006-Ohio-2828, ¶ 48 (*Waddy IV*). This court also noted that pursuant to *Lott*, a petition for post-conviction relief asserting an *Atkins* claim for the first time must be treated as a first petition for post-conviction relief pursuant to R.C. 2953.21, and not as a successive petition pursuant to R.C. 2953.23. *Id.* at ¶ 25; *Lott*, 2002-Ohio-6625 at ¶ 17.

{¶ 7} On remand, the trial court appointed two attorneys to represent appellant with regard to his *Atkins* claim. The trial court also approved funding for appellant's counsel to hire a firm to investigate appellant's *Atkins* claim, and for Dr. Daniel Grant to conduct a psychological evaluation of appellant. In January 2009, the trial court held a two-day evidentiary hearing ("2009 *Atkins* hearing"). The sole witness at the hearing was Dr. Jeffrey L. Smalldon, a psychologist called as a court's witness upon appellant's motion. Dr. Smalldon discussed IQ testing and scoring techniques as well as common indicators of mental retardation. Based upon his 1995 evaluation of appellant and a review of appellant's history of IQ testing, which included the full scale IQ of 83 Dr. Smalldon obtained from his

---

intended by the appellate court. *State v. Nelson*, 10th Dist. Franklin No. 14AP-229, 2014-Ohio-5757, ¶ 3, fn.1.

own testing, Dr. Smalldon ultimately opined that although appellant functions at a sub-average level, he "is not mentally retarded."

{¶ 8}  On November 25, 2009, the trial court denied appellant's *Atkins* post-conviction relief petition ("*Atkins* PCR petition"), finding that appellant had failed to prove, by a preponderance of the evidence, that he was mentally retarded.  On appeal, this court affirmed the trial court's decision.  *State v. Waddy*, 10th Dist. Franklin No. 09AP-1197, 2011-Ohio-3154 (*Waddy V*).  The Ohio Supreme Court declined jurisdiction.  *State v. Waddy*, 133 Ohio St.3d 1422, 2012-Ohio-4902.

{¶ 9}  On July 18, 2013, appellant filed a motion for leave to file a motion for a new trial under Crim.R. 33(B) ("Crim.R. 33(B) motion").  Appellant alleged that newly discovered evidence supports his claim he is mentally retarded and thus ineligible for the death penalty. Appellant further alleged that the evidence was not previously discovered due to the ineffective assistance of his prior attorneys.  Specifically, appellant asserted his appointed *Atkins* counsel was ineffective at the 2009 *Atkins* hearing for failing to provide the trial court "with an in-depth understanding of the principles applicable to a proper retroactive determination of an *Atkins* claim."  That is, his appointed *Atkins* counsel was ineffective for failing to call an expert witness.  As a result, the trial court's prior decisions "were based on a woefully incomplete record," because the WAIS-IV, "which is considered to be the gold standard for IQ tests," was never administered to appellant by Dr. Smalldon, and prior evaluations of appellant failed to both assess his adaptive functioning and interview his relatives for that purpose.  Appellant also asserted his 1987 trial counsel was ineffective for failing to uncover the physical and sexual abuse that occurred at appellant's home during his childhood, and was thus ineffective for failing to present such "critical" mitigating evidence at the trial.

{¶ 10}  Appellant's Crim.R. 33(B) motion was supported by a 2012 psychological report

- 4 -

from Dr. Cynthia Hartung, a 2013 affidavit from Dr. Smalldon, affidavits from appellant's siblings, and a 2013 affidavit from Dr. Grant. In her report, Dr. Hartung opined that based upon appellant's "historical information, IQ testing, and adaptive behavior testing [which included the administration of the ABA-II test, an adaptive behavior test, and Dr. Hartung's interview of two of appellant's siblings], * * * the majority of the available evidence indicates that Mr. Waddy is functioning in the mild mental retardation range and has been performing at this level since childhood." Dr. Hartung further stated that she had administered the WAIS-IV on appellant which resulted in a full scale IQ of 73.

{¶ 11} In his affidavit, Dr. Smalldon generally stated he would not testify today in the same way he testified at the 2009 *Atkins* hearing. Dr. Smalldon noted he was not asked to and did not assess appellant for mental retardation during the 1995 evaluation, nor did he administer any adaptive behavior test to determine appellant's adaptive functioning skills. Dr. Smalldon stated that upon reviewing additional materials regarding appellant, including Dr. Hartung's report, and the evolving psychological study of mental retardation, especially since 2002, he agrees with Dr. Hartung that "the most weight should be given to" the full scale IQ of 73 resulting from the WAIS-IV because this test is considered superior to the older IQ tests. Dr. Smalldon further stated, "I would cite the strong likelihood that, all things considered, Mr. Waddy would have met" the three-prong test under *Lott*.

{¶ 12} In his affidavit, Dr. Grant indicates he administered two IQ tests to appellant, including the WAIS-IV, after he was retained by appellant's appointed *Atkins* counsel in preparation for the 2009 *Atkins* hearing. Both tests resulted in a full scale IQ of 76. The affidavits of appellant's four siblings detail the physical abuse suffered by appellant and his siblings as a result of their father's beatings. The affidavit of appellant's sister also indicates her suspicions their father may have attempted to molest her daughters during overnight visits.

{¶ 13} On March 13, 2015, the trial court denied appellant's Crim.R. 33(B) motion, finding that appellant had failed to prove, by clear and convincing evidence, that he "was unavoidably prevented from filing a new trial motion within the time constraints based on ineffective assistance of counsel." With regard to the 2009 *Atkins* hearing, the trial court found that appellant had failed to establish that his appointed *Atkins* counsel's performance was deficient. The trial court found that given Dr. Grant's affidavit, "it was both reasonable and strategic for counsel to forego calling Dr. Grant to testify" at the hearing. Further, while appellant "has now located an expert who supports his position, there is no indication that his counsel acted unreasonably. Effectiveness standards do not mandate that counsel consult multiple experts until they find one who supports their conclusion." With regard to the 1987 trial, the trial court found that appellant's claim of ineffective assistance of counsel was barred by res judicata because the claim could have been raised in his 1995 petition for post-conviction relief and/or his 2003 *Atkins* PCR petition.

{¶ 14} Appellant appeals, raising one assignment of error:

{¶ 15} THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL UNDER CRIMINAL RULE 33(B) WITHOUT HOLDING A HEARING ON THE MOTION OR PERMITTING ANY FACT DEVELOPMENT TO SUPPORT THE MOTION FOR LEAVE.

## II. ANALYSIS

{¶ 16} Appellant argues the trial court abused its discretion in denying his Crim.R. 33(B) motion without a hearing. Appellant generally asserts he was unavoidably prevented from timely discovering the evidence he now seeks to introduce because of the ineffective assistance of both his 1987 trial counsel and his appointed *Atkins* counsel.

### A. Crim.R. 33(B); Preliminary Issues

{¶ 17} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed

> within one hundred twenty days after the day upon which the verdict was rendered. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Because appellant's motion was filed well outside the 120-day period, he was required to obtain leave of court to file his motion for new trial. *State v. Hoover-Moore*, 10th Dist. Franklin No. 14AP-1049, 2015-Ohio-4863, ¶ 13.

{¶ 18} "To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days." *Id.* A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id.*; *State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist.1984).

{¶ 19} "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 9. The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11.

{¶ 20} An appellate court applies an abuse-of-discretion standard in reviewing a trial court's denial of a motion for leave to file a motion for new trial. *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 9. A trial court's decision whether to conduct an

evidentiary hearing on a motion for leave to file a motion for new trial is also discretionary. *Hoover-Moore*, 2015-Ohio-4863 at ¶ 14.

### 1. Is Crim.R. 33(B) An Appropriate Remedy?

{¶ 21} As an initial matter, the state argues that Crim.R. 33 is "the wrong vehicle in which to relitigate [appellant's *Atkins*] claim." The state asserts that appellant "should have been proceeding, if at all, under the suitable post-conviction framework in R.C. 2953.21 et seq." The state cites R.C. 2953.21(J), *Lott*, and *State v. Reynolds*, 79 Ohio St.3d 158 (1997), in support of its assertion.

{¶ 22} In *Lott*, the Ohio Supreme Court recognized that a petition for post-conviction relief is the appropriate remedy within which to raise a first-time *Atkins* claim. *Lott*, 2002-Ohio-6625 at ¶ 13 (the procedures for postconviction relief outlined in R.C. 2953.21 et seq. provide a suitable statutory framework for reviewing Lott's *Atkins* claim). The supreme court further held that for defendants who have been sentenced to death, any petition for post-conviction relief specifically raising an *Atkins* claim and filed more than 180 days after *Lott* "must meet the statutory standards for untimely and successive petitions for postconviction relief," that is, R.C. 2953.23. *Id.* at ¶ 24.

{¶ 23} In *Reynolds*, the Ohio Supreme Court held that "[w]here a criminal defendant, subsequent to [his] direct appeal, files a motion seeking vacation or correction of [his] sentence on the basis [his] constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *Reynolds*, 79 Ohio St.3d at syllabus. In turn, R.C. 2953.21(J) provides that a petition for post-conviction relief "is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case[.]" Neither *Lott* nor *Reynolds* address the interplay between R.C. 2953.21 et seq., and Crim.R. 33(B).

{¶ 24} Notwithstanding R.C. 2953.21(J), and "with or without a constitutional claim, this court [has] at least implicitly found that the Crim.R. 33(B) procedure for new trial motions exists independently from the R.C. 2953.21 procedure for post-conviction petitions." *Lee*, 2005-Ohio-6374 at ¶ 13; *State v. Burke*, 10th Dist. No. 06AP-656, 2006-Ohio-4597, ¶ 10; and *State v. Caulley*, 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, ¶ 18 (rejecting the state's argument that the defendant's motion for new trial based upon newly discovered evidence and raising a claim of ineffective assistance of counsel should be treated as a petition for post-conviction relief).

{¶ 25} In ruling upon appellant's Crim.R. 33(B) motion, the trial court ignored the state's argument that R.C. 2953.21 was appellant's exclusive remedy and denied appellant's motion on the ground appellant had failed to meet the requirements under Crim.R. 33(B).

{¶ 26} Had the trial court treated appellant's Crim.R. 33(B) motion as a post-conviction relief petition, the motion would have been a successive and untimely petition pursuant to R.C. 2953.23. As pertinent here, a trial court may not entertain an untimely and second or successive petition for post-conviction relief "unless the petitioner initially demonstrates * * * he was unavoidably prevented from discovering the facts necessary for the claim for relief[.]" *State v. Tolliver*, 10th Dist. Franklin No. 14AP-170, 2014-Ohio-4824, ¶ 18; R.C. 2953.23(A)(1)(a).

{¶ 27} Similarly, within the context of this case, proceedings under Crim.R. 33(B) upon grounds of newly discovered evidence would require appellant to demonstrate he was unavoidably prevented from discovering the evidence within the requisite time. Thus, in order to obtain relief pursuant to Crim.R. 33(B) or R.C. 2953.23, a movant/petitioner must satisfy the threshold requirement of unavoidable prevention.

{¶ 28} "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable

diligence." *State v. Howard*, 10th Dist. Franklin No. 15AP-161, 2016-Ohio-504, ¶ 21. This court notes that the "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1). *Id.* at ¶ 55; *see also State v. Keenan*, 8th Dist. Cuyahoga No. 77480, 2001 WL 91129, *2 (Feb. 1, 2001) (the exception stated in Crim.R. 33[B] for evidence that a defendant was unavoidably prevented from timely presenting is consistent with the standard for untimely or successive postconviction relief petitions stated in R.C. 2953.23).

**{¶ 29}** Because appellant's burden to establish unavoidable prevention is the same under Crim.R. 33(B) and R.C. 2953.23(A)(1), we need not determine whether the latter is appellant's exclusive remedy, as we find that the trial court did not err in denying appellant's Crim.R. 33(B) motion.

## 2. Did the Trial Court Apply the Proper Standard of Review in Denying Appellant's Crim.R. 33(B) Motion?

**{¶ 30}** Appellant initially argues the trial court abused its discretion in denying his Crim.R. 33(B) motion because the court applied the wrong standard when it considered appellant's motion. Specifically, appellant asserts the trial court incorrectly focused on the merits of his ineffective assistance of counsel claim, instead of whether appellant had clearly and convincingly established he was unavoidably prevented from discovering the evidence. In support of his assertion, appellant cites the trial court's following statement made at the outset of the court's analysis:

> Before the Court may grant Defendant leave to file his Motion for New Trial, Defendant must establish by clear and convincing evidence that his counsel's representation at the [2009] hearing was constitutionally deficient.

**{¶ 31}** However, the foregoing quote omits the trial court's very next sentence which states, "Defendant must further establish that that deficiency precluded Defendant's discovery of relevant evidence until now." Given the fact appellant claims he was

unavoidably prevented from discovering the evidence precisely because of ineffective assistance of both his trial counsel and his appointed *Atkins* counsel, it would have been impossible for the trial court to consider appellant's claim of being "unavoidably prevented" without concurrently considering whether counsel was ineffective.

{¶ 32} Ultimately, the trial court denied appellant's Crim.R. 33(B) motion on the ground appellant failed to demonstrate he was unavoidably prevented from discovering the evidence relied upon in the motion, and hence from timely filing the motion: "The Court does not find clear and convincing evidence that Defendant was unavoidably prevented from filing a new trial motion within the time constraints based on ineffective assistance of counsel." *See State v. Mosley*, 10th Dist. Franklin No. 07AP-860, 2008-Ohio-951 (trial court's denial of Crim.R. 33[B] motion for leave presumes trial court found defendant failed to show he was unavoidably prevented from discovering the evidence relied upon in the motion). Accordingly, the trial court applied the proper standard when it considered appellant's Crim.R. 33(B) motion.

### 3. Was Appellant Entitled to a Hearing Upon His Crim.R. 33(B) Motion?

{¶ 33} Appellant also suggests he was entitled to a hearing on his Crim.R. 33(B) motion given Dr. Smalldon's recantation in his 2013 affidavit. Appellant cites *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468, in support of his argument. This court finds that *Alexander* is not applicable in the case at bar.

{¶ 34} In *Alexander*, the trial court denied the defendant's motion for leave to file a motion for new trial as untimely, and without holding a hearing to inquire into the circumstances of a state witness' recantation. The Eleventh Appellate District held that, had the trial court's denial of the motion for leave not been harmless, the denial of the motion without a hearing "would have been an abuse of discretion [because] such a procedural requirement is necessary so that a genuine recantation that could be outcome determinative

is not foreclosed only because the recanting witness decides to 'do the right thing' belatedly." *Alexander* at ¶ 21.

{¶ 35} Contrary to appellant's suggestion, Dr. Smalldon's 2013 affidavit is not a recantation of his testimony at the 2009 *Atkins* hearing. "A witness recants * * * by formally or publicly withdrawing or repudiating earlier testimony." *State v. Covender*, 9th Dist. Lorain No. 07CA009228, 2008-Ohio-1453, ¶ 21 (Dickinson, J., concurring in part and dissenting in part), citing Black's Law Dictionary (7th Ed.1999) 1274. Dr. Smalldon testified at the 2009 *Atkins* hearing that appellant's full scale IQ was 83 based upon his 1995 IQ testing of appellant. Dr. Smalldon's 2013 affidavit does state he would now apply the Flynn effect which would result in a "lowering of the Full Scale IQ estimate from 83 to 79."[3] However, a full scale IQ of 79, even after applying an additional downward adjustment of five points reflecting the standard deviation, would result in a full scale IQ score of 74.[4] Pursuant to *Lott*, a full scale IQ score of 74 raises a rebuttable presumption that appellant is not mentally retarded, consistent with Dr. Smalldon's ultimate conclusion in 2009.

{¶ 36} As opposed to a recantation, a review of Dr. Smalldon's 2013 affidavit simply

---

3. In general, the Flynn effect, a theory published by political scientist James R. Flynn, "'argues that IQ scores have gone up over the years, and that when a test is administered years after its publication, the results should be adjusted downward to account for the lapse in time between publication and its administration.'" *State v. Waddy*, 10th Dist. Franklin No. 09AP-1197, 2011-Ohio-3154, ¶ 20, quoting *Thomas v. Quarterman*, 335 Fed.Appx. 386, 390 (5th Cir.2009). *See also Wiley v. Epps*, 625 F.3d 199, 214 (5th Cir.2010) ("the Flynn effect provides a reduction in IQ scores to account for inflation in the score based on the number of years since the test was normalized"). The theory "attributes the general rise of I.Q. scores of a population over time to the use of outdated testing procedures, emphasizing the need for the repeated renormalization of I.Q.-test standard deviations over time." *In re Salazar*, 443 F.3d 430, 433 (5th Cir.2006). This court, in addressing the theory in the context of an *Atkins-Lott* claim, has held that "a trial court must consider evidence presented on the Flynn effect, but, consistent with its prerogative to determine the persuasiveness of the evidence, the trial court is not bound to, but may, conclude the Flynn effect is a factor in a defendant's IQ score." *State v. Burke*, 10th Dist. Franklin No. 04AP-1234, 2005-Ohio-7020, ¶ 51.

4. As this court explained in *Waddy V*, "'IQ tests typically have a five point standard error of measurement, which means that any score actually represents a score that could be five points higher or lower.'" 2011-Ohio-3154 at ¶ 32, quoting *Wilson v. Quarterman*, E.D.Texas No. 6:06-cv-140, 2009 WL 900807, *4 (March 31, 2009). "The standard of measurement is an interpretative tool that reflects the idea that I.Q. scores have a ninety-five percent confidence interval, and thus an individual's true score is somewhat within a five-point range of the reported score." *Waddy V* at *id*.

shows that based upon the evolving psychological study of mental retardation, especially since 2002, he now believes it is appropriate to apply the Flynn effect in capital cases where IQ results were obtained using older IQ tests, which would include his 1995 IQ testing of appellant. In his affidavit, Dr. Smalldon also agrees with Dr. Hartung that the most weight should be given to appellant's 2012 IQ test results following Dr. Hartung's administration of the WAIS-IV test. Dr. Smalldon's 2013 affidavit plainly explains the timing and reasons for his change of opinion and is not a recantation of his earlier testimony.

### B. Unavoidable Prevention As a Result of Ineffective Assistance of Counsel

{¶ 37} Appellant argues it was an abuse of discretion for the trial court to deny his Crim.R. 33(B) motion because appellant was unavoidably prevented from discovering and timely presenting evidence of his mental retardation and abusive childhood due to the ineffective assistance of both his 1987 trial counsel and his appointed *Atkins* counsel.[5] Appellant asserts he was entitled to effective assistance of counsel both during the mitigation phase of his 1987 trial and in connection with his *Atkins* litigation, but was deprived of that right, and consequently seeks a new mitigation phase of his trial.

### 1. Was 1987 Trial Counsel Ineffective For Failing to Present Evidence of Appellant's Abusive Childhood At Trial?

{¶ 38} Appellant first argues he was unavoidably prevented from discovering and timely presenting evidence of his abusive childhood at his 1987 trial due to the ineffective assistance of trial counsel. As a result, the trial court abused its discretion in denying his Crim.R. 33(B) motion.

{¶ 39} The record shows that during the mitigation phase of appellant's 1987 trial, only one of appellant's siblings testified on behalf of appellant. The sibling testified regarding the

---

5. Appellant's argument seemingly creates a "Catch 22" situation. In order for counsel to have been ineffective in presenting evidence, the evidence would have had to be discoverable. If the evidence was undiscoverable, as required by Crim.R. 33(B), then counsel could not have been ineffective in failing to present it.

circumstances under which appellant grew up, and stated that appellant and his siblings were punished for misbehaving by receiving beatings by their father. When appellant filed his Crim.R. 33(B) motion, he attached the affidavits of four other siblings. As stated earlier, those affidavits detail the physical abuse suffered by appellant and his siblings as a result of their father's beatings. The affidavit of appellant's sister also indicates her suspicions their father may have attempted to molest her daughters during overnight visits.

{¶ 40} The trial court denied appellant's Crim.R. 33(B) motion on the ground his claim of ineffective assistance of trial counsel for failure to present evidence of his abusive childhood was barred by res judicata. As the trial court aptly stated, appellant "raised a claim alleging ineffective assistance of trial counsel" in his first petition for post-conviction relief in 1995 "and had the opportunity to raise the issue again in 2003" when he filed his *Atkins* PCR petition. Appellant does not explain why or how he was prevented from raising the issue in either prior petition for post-conviction relief. Because appellant could have raised the issue in his 1995 and 2003 petitions for post-conviction relief, it is barred by res judicata. *See State v. Russell*, 10th Dist. Franklin No. 04AP-1149, 2005-Ohio-4063; *State v. Petrone*, 5th Dist. Stark No. 2013 CA 00213, 2014-Ohio-3395 (res judicata bars a defendant from raising the issue of ineffective assistance of trial counsel via an appeal from the denial of a motion for leave to file a motion for new trial where the issue could have been, but was not, raised in earlier proceedings).

### 2. Was Appointed *Atkins* Counsel Ineffective at the 2009 *Atkins* Hearing?

{¶ 41} Appellant next argues he was unavoidably prevented from discovering and timely presenting evidence of his abusive childhood and mental retardation at the 2009 *Atkins* hearing due to the ineffective assistance of his appointed *Atkins* counsel.

### a. The Right to Counsel in Post-Conviction Relief Proceedings

{¶ 42} The Sixth Amendment to the United States Constitution provides a right to the

effective assistance of counsel in criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). However, the United States Supreme Court has held that there is no federal constitutional right to counsel in state post-conviction proceedings. Rather, "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990 (1987). Subsequently, the Supreme Court held that because there is no constitutional right to an attorney in state post-conviction proceedings, there is no federal constitutional right to the effective assistance of counsel in such proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings"). That same year, the Ohio Supreme Court held that a post-conviction indigent petitioner has neither a state nor a federal constitutional right to counsel. *State v. Crowder*, 60 Ohio St.3d 151, 152 (1991).

{¶ 43} This court has generally held that the right to appointed counsel does not apply to post-conviction relief proceedings because such proceedings are civil in nature. *State v. Scudder*, 131 Ohio App.3d 470, 473-474 (10th Dist.1998). As this court explained in *Scudder*,

> The right to appointed counsel extends to only the first appeal of right, and since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, * * * he has no such right when attacking, in post-conviction proceedings, a conviction that has become final upon exhaustion of the appellate process.

*Id.* This court continued, "[e]xcept as noted above, a civil litigant does not have a right to the effective assistance of appointed counsel. Unlike a criminal defendant, a civil litigant has no constitutional right to the effective assistance of counsel." (Internal citation omitted.) *Id.* at 474. "Accordingly, although the General Assembly felt it appropriate to grant indigent postconviction petitioners access to appointed counsel, it was not required to do so, nor was

it required to guarantee the effective assistance of counsel." *Id.* This court then held that because post-conviction relief proceedings in Ohio are civil in nature, a "defendant has no Sixth Amendment right to the effective assistance of" post-conviction counsel. *Id.*

{¶ 44} Other appellate courts have reached the same conclusion. *See State v. Sheppard*, 1st Dist. Hamilton No. C-000665, 2001 WL 331936 (Apr. 6, 2001) (a civil litigant in a post-conviction proceeding has no due-process right to the effective assistance of counsel, even in a death-penalty case); *State v. D'Ambrosio*, 8th Dist. Cuyahoga No. 75076, 2000 WL 283079 (Mar. 16, 2000) (same); *In re Scharf*, 6th Dist. Ottawa No. OT-01-044, 2002-Ohio-5204 (because post-conviction relief proceedings are civil in nature, a petitioner has no Sixth Amendment right to the effective assistance of counsel); *State v. Brown*, 7th Dist. Mahoning No. 01CA229, 2003-Ohio-3551 (holding that while appointed counsel must be qualified to file a capital post-conviction petition, there is no requirement that they be effective); and *State v. McKelton*, 12th Dist. Butler No. CA2015-10-183, 2016-Ohio-3216 (the Sixth Amendment right to effective assistance of counsel does not extend to state post-conviction relief proceedings).

{¶ 45} Although R.C. 2953.21(I)(1) allows an indigent petitioner sentenced to death to have appointed counsel in a first post-conviction relief proceeding, R.C. 2953.21(I)(2) expressly prohibits the petitioner from collaterally challenging counsel's effectiveness in pursuit of post-conviction relief: "The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal." R.C. 2953.21(I)(2); *see also Scudder*, 131 Ohio App.3d at 474; *Brown* at ¶ 13-14.

{¶ 46} This court recognizes that while the decisions cited above involved petitions for post-conviction relief filed pursuant to R.C. 2953.21, none of the cases involved post-

conviction *Atkins* proceedings. Nevertheless, whether a defendant has a constitutional right to effective assistance of counsel in connection with his post-conviction *Atkins* petition is debatable. *See State v. Bays*, 2d Dist. Greene No. 2014-CA-24, 2015-Ohio-1935; *Waddy v. Robinson*, S.D.Ohio No. 3:98-CV-084, 2014 WL 4674291 (Sept. 18, 2014) (there is no constitutional right to effective assistance of counsel in post-*Atkins* proceedings); and *Waddy v. Robinson*, S.D.Ohio No. 3:98-CV-084, 2015 WL 46209 (Jan. 2, 2015) (holding that "[p]rospectively, this Court has always assured that capital habeas petitioners with *Atkins* claims had death-certified counsel to represent them in those post-*Atkins* Ohio Revised Code § 2953.21 proceedings. But that is far different from recognizing a constitutional right to effective assistance in a post-*Atkins* post-conviction proceeding. Such a right can be recognized only by the United States Supreme Court").[6]

{¶ 47} In the case at bar, following this court's decision in *Waddy IV*, 2006-Ohio-2828, the trial court appointed two attorneys to represent appellant with regard to his *Atkins* claim. This was in accord with this court's decision in *Burke* where we held, "an indigent capital defendant raising an *Atkins* claim for the first time in a post-conviction proceeding is entitled to be represented by two certified attorneys." *Burke*, 2005-Ohio-7020 at ¶ 46; R.C. 2953.21(I).

{¶ 48} Because appellant was provided with two certified attorneys to prosecute his

---

6. In *Bays*, the defendant initially filed a petition for post-conviction relief seeking to vacate his death sentence pursuant to *Atkins* and *Lott*. He subsequently filed a Civ.R. 41(A)(1) notice of voluntary dismissal of his *Atkins* PCR petition which the trial court denied. The case sat dormant for over five years until the defendant moved to withdraw his notice of voluntary dismissal and to supplement or amend his *Atkins* PCR petition with additional evidence regarding his mental retardation. The trial court denied both motions. In a split decision, the Second Appellate District upheld the trial court's denial of both motions but remanded the case for the trial court to consider the defendant's pending *Atkins* PCR petition. The concurring judge agreed with the authoring judge's decision to remand the case for the trial court to consider the *Atkins* PCR petition. "At the same time," the concurring judge also agreed with the dissenting judge that the defendant had a constitutional right to effective assistance of counsel in pursuing post-conviction relief based on *Atkins* and *Lott*. The dissenting judge's position was based on a decision of the Tenth Circuit, *Hooks v. Workman*, 689 F.3d 1148 (10th Cir.2012), which held that "defendants in *Atkins* proceedings have the right to effective counsel," and that such right was "clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 1885. In both of its *Waddy* decisions, the federal district court declined to follow *Hooks* and noted that no federal courts have

- 17 -

*Atkins* claim, and because we agree with the trial court that his appointed Atkins counsel was not ineffective, we find that the trial court did not err in denying his Crim.R. 33(B) motion.

**b. Failure to Present Evidence of Appellant's Abusive Childhood at the 2009 *Atkins* Hearing**

**{¶ 49}** On appeal, appellant ostensibly argues he was unavoidably prevented at the 2009 *Atkins* hearing from presenting evidence of his abusive childhood and mental retardation due to the ineffectiveness of his appointed *Atkins* counsel. However, in his Crim.R. 33(B) motion, appellant did not argue he was unavoidably prevented from discovering evidence of his abusive childhood and presenting such evidence at the hearing due to the ineffectiveness of his appointed *Atkins* counsel. Rather, appellant only argued he was unavoidably prevented from discovering evidence of his mental retardation because until Dr. Hartung, "no expert ever performed an adaptive functioning evaluation" on appellant, "nor did anyone attempt to interview [appellant's] family members in person." By contrast, Dr. Hartung had assessed appellant's adaptive functioning by administering the ABAS-II test and by interviewing two of appellant's siblings. In its decision denying appellant's Crim.R. 33(B) motion, the trial court only addressed the alleged ineffectiveness of appellant's appointed *Atkins* counsel for failing to call an expert willing to testify that appellant suffers from mental retardation.

**{¶ 50}** In any event, assuming appellant argues on appeal that he was unavoidably prevented from discovering evidence of his abusive childhood and presenting such evidence at the 2009 *Atkins* hearing, we find appellant cannot demonstrate he was unavoidably prevented from discovering the evidence before the *Atkins* hearing or in a timely manner thereafter. Appellant cannot demonstrate under Crim.R. 33(B) that he had no knowledge of his abusive childhood. Indeed, the fact he presented some evidence of his abusive

---

followed *Hooks*.

childhood at the mitigation phase of his 1987 trial plainly indicates he was aware of this evidence. Therefore, at the time of the 2009 *Atkins* hearing, appellant was aware of the facts upon which he now bases his claim for relief.

{¶ 51} Furthermore, while appellant's *Atkins* PCR petition is considered a first and timely petition for post-conviction relief under R.C. 2953.21 with regard to the *Atkins* claim, it is a successive and untimely petition under R.C. 2953.23 with regard to the abusive childhood evidence. In *Lott*, the Ohio Supreme Court created an allowance for capital defendants to raise an *Atkins* claim under R.C. 2953.21 within 180 days from the release of the *Lott* opinion. *Lott*, 2002-Ohio-6625 at ¶ 24. *Lott*, however, did not provide that non-*Atkins* issues would enjoy the same special dispensation. The significance of this is that the R.C. 2953.21(I)(1) statutory right to counsel of capital defendants in post-conviction relief proceedings is limited to first and timely petitions under R.C. 2953.21. Because appellant's *Atkins* PCR petition was a successive and untimely petition under R.C. 2953.23 with regard to the abusive childhood evidence, there was no right to counsel and therefore, no right to the effective assistance of counsel.

### c. Failure to Present *Atkins* Evidence at the 2009 *Atkins* Hearing

{¶ 52} Appellant argues he was unavoidably prevented from discovering evidence of his mental retardation and presenting such evidence at the 2009 *Atkins* hearing because of the failure of his appointed *Atkins* counsel to call an expert such as Dr. Hartung. We agree with the trial court that appellant failed to establish that counsel's performance at the hearing was deficient. As the trial court properly found:

> The Court appointed two knowledgeable and experienced attorneys to represent defendant at his 2009 evidentiary hearing. The Court approved counsel's request for expert funding for an investigator and for psychologist, Dr. Daniel Grant. At the evidentiary hearing, counsel confirmed that they were electing not to call Dr. Grant as a defense witness. Rather, counsel chose to rely on their cross-examination of Dr. Smalldon.

> Defendant argues that counsel was ineffective for failing to call an expert willing to testify that Defendant suffers from MR [mental retardation]. Defendant submits Dr. Cynthia Hartung's * * * Report in support of his argument, wherein Dr. Hartung opines that Defendant suffers from a mild form of MR.
>
> The Court finds that Defendant has failed to establish by clear and convincing evidence that counsel's performance at his 2009 evidentiary hearing was deficient. Defendant submitted an affidavit from Dr. Grant in support of his Motion for New Trial. In his affidavit, Dr. Grant concedes that he administered two IQ tests on Defendant which resulted in a full scale IQ of 76. As such, it was both reasonable and strategic for counsel to forego calling Dr. Grant to testify at the evidentiary hearing. Although Defendant has now located an expert who supports his position, there is no indication that his counsel acted unreasonably.

{¶ 53} Counsel's decision whether to call a witness generally falls within the rubric of trial strategy and will not be second-guessed by a reviewing court. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 222. In hiring experts, "[a]ttorneys need not pursue every conceivable avenue; they are entitled to be selective." *State v. Murphy*, 91 Ohio St.3d 516, 542 (2001); *State v. Drummond*, 7th Dist. Mahoning No. 05 MA 197, 2006-Ohio-7078, ¶ 61. As the trial court properly found, "[e]ffectiveness standards do not mandate that counsel consult multiple experts until they find one who supports their conclusion."

{¶ 54} We therefore find that the trial court did not err in denying appellant's Crim.R. 33(B) motion with regard to his post-conviction *Atkins* proceedings.

### d. Applicability of *Martinez v. Ryan*, and *Maples v. Thomas*

{¶ 55} Appellant asserts, however, that the ability of his appointed *Atkins* counsel to discover evidence of appellant's abusive childhood and mental retardation and present it at the 2009 *Atkins* hearing cannot be held against him and does not preclude him from asserting he was unavoidably prevented from discovering such evidence because he was essentially abandoned by his counsel. Appellant also asserts that given his imprisonment and mental retardation, he was "in 'no position' to develop evidence in support of an

ineffectiveness claim." In support of his assertions, appellant cites two decisions from the United States Supreme Court, *Martinez v. Ryan*, __U.S.__, 132 S.Ct. 1309 (2012), and *Maples v. Thomas*, __U.S.__, 132 S.Ct. 912 (2012). Both decisions address what may constitute cause to excuse a procedural default in federal habeas proceedings.[7]

{¶ 56} It is well-established that "[a] lawyer is an agent for his client and a party is deemed bound by the acts of his lawyer and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *State v. Mayle*, 10th Dist. Franklin No. 01AP-978, 2002 WL 756864, *2 (Apr. 30, 2002), quoting *GTE Automatic Electric v. ARC Industries*, 47 Ohio St.2d 146, 152 (1976).

{¶ 57} *Martinez* involved a petition for habeas corpus and originated in Arizona where state law only permits ineffective assistance of counsel claims to be brought in state collateral proceedings rather than on direct appeal. Martinez's post-conviction counsel filed a direct appeal and initiated a state collateral proceeding, but failed to present a claim of ineffective assistance of trial counsel in the state collateral proceeding. On federal habeas review, Martinez argued he could overcome procedural default as he had cause for the default, to wit, his first post-conviction counsel was ineffective for failing to raise any claims in the first notice of post-conviction relief. Both the District Court for the District of Arizona and the Ninth Circuit Court of Appeals held that Martinez had not shown cause to excuse the procedural default because, under *Coleman*, 111 S.Ct. 2546, prisoners have no federal constitutional right to the effective assistance of counsel in post-conviction proceedings.

{¶ 58} In addressing Martinez's claim, the Supreme Court acknowledged its holding in *Coleman* that under well-settled principles of agency law, "[n]egligence on the part of a

---

7. A prisoner must litigate federal law challenges to his conviction in state court before bringing them to federal court. As the Eighth Appellate District explained, "the failure to assert claims in state court bars a prisoner from later litigating those claims in federal habeas proceedings because the prisoner failed to exhaust available state remedies. This concept is known as 'procedural default.' However, a petitioner may overcome a 'procedural

prisoner's postconviction attorney does not qualify as 'cause.'" *Martinez*, 132 S.Ct. at 1316. The Supreme Court also acknowledged that in cases where the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim and thus, the prisoner's "one and only appeal" as to the claim. *Id.* at 1315-1316. As a result, "when an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim," and since a procedural default would preclude any habeas claim, "no court will review the prisoner's claim." *Id.* at 1314-1316.

{¶ 59} Consequently, the Supreme Court qualified its holding in *Coleman* and held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Id.* at 1315. The Supreme Court further held that under state law, where claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. In other words, if the post-conviction proceeding was the defendant's first opportunity to argue an error in his conviction, then the defendant, whether unrepresented or whose counsel was ineffective in the "initial-review collateral proceeding," is not precluded by the procedural default doctrine from raising the trial error in federal habeas proceedings.

{¶ 60} Appellant ostensibly parallels his case to Martinez's case in that "an incarcerated prisoner like [appellant] is in 'no position' to develop evidence in support of an

---

default' by demonstrating 'cause' and 'prejudice.'" *State v. Glover*, 8th Dist. Cuyahoga Nos. 100330 and 100331, 2014-Ohio-3228, ¶ 22.

ineffectiveness claim." *See Martinez*, 132 S.Ct. at 1317 ("While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record").

{¶ 61} *Martinez*, however, does not recognize a constitutional right to counsel or effective assistance of counsel in post-conviction proceedings. Nor does it find any particular state procedural or substantive rules akin to Ohio's post-conviction relief scheme to be unconstitutional. *State v. Glover*, 8th Dist. Cuyahoga Nos. 100330 and 100331, 2014-Ohio-3228, ¶ 28 (*Martinez* "does not provide a free-standing constitutional right to the appointment of counsel in postconviction proceedings"). Rather, *Martinez* simply "established an equitable doctrine for overcoming procedural default in certain limited circumstances." *Id.* Indeed, the Supreme Court was careful to point out it was only recognizing a "narrow exception" to its holding in *Coleman*:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

(Internal citations omitted.) *Martinez*, 132 S.Ct. at 1320. That is, the Court made clear that *Martinez* applies only to cases where defendants have been denied the effective assistance of counsel at the "initial review" stage of the litigation. *Id.* at 1315. The Court expressly stated that its holding does not apply to successive collateral proceedings. *Id.* at 1320. Claims of newly discovered evidence may be brought, and often are brought, in successive collateral proceedings, which the *Martinez* court expressly excluded from its holding. *Id.*; *Glover* at ¶ 30.

- 23 -

{¶ 62} Appellant argues that in *Martinez*, the Supreme Court observed that incarcerated defendants claiming ineffective of counsel or denial of the right to counsel in initial-review collateral proceedings "'are generally ill equipped to represent themselves' because they do not have a brief from counsel or an opinion of the court addressing their claim of error." *Martinez* at 1317. Such was not the case here. The record shows there were substantial briefing and courts' decisions regarding appellant's mental retardation claim from his 2003 Atkins PCR petition.

{¶ 63} Appellant spends considerable effort likening the cause for procedural default aspect of *Martinez* to this case. Specifically, appellant claims that his 2009 *Atkins* hearing is an initial review collateral proceeding with regard to his *Atkins* claim, and that the alleged ineffectiveness of his appointed *Atkins* counsel at the hearing is cause to excuse procedural default at that hearing. This court finds that the exception to the application of the procedural default doctrine recognized in *Martinez* has no relevancy to our analysis of appellant's Crim.R. 33(B) claim. First, the procedural default doctrine, while applicable to federal habeas corpus proceedings, does not apply to state post-conviction relief proceedings. Furthermore, the mere fact that a claim may be subject to the *Martinez* exception to the procedural default doctrine does not mean that the claim has merit or that a state court is required to afford a subsequent merit review on the claim.

{¶ 64} Appellant also cites the Supreme Court's decision in *Maples* in support of his claim he was abandoned by his prior counsels and thus cannot be bound by their ineffective assistance.

{¶ 65} *Maples* addressed whether an habeas corpus petitioner was bound by his post-conviction attorneys' failure to timely file a notice of appeal or whether cause for a procedural default existed. The Supreme Court generally held that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor

can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples*, 132 S.Ct. at 923.

{¶ 66} In reaching its holding, the Supreme Court explained that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' * * * because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." (Internal citation omitted.) *Id.* at 922. "Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause. We do not disturb that general rule." (Internal citation omitted). *Id.* "A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal agent relationship, an attorney no longer acts, or fails to act, as the client's representative." *Id.* at 922-923. As a result, the attorney's acts or omissions "cannot fairly be attributed to [the client]." *Id.* at 923. The Supreme Court further observed that there was an "essential difference between a claim of attorney error, however egregious, and a claim that an attorney ha[s] essentially abandoned his client." *Id.*

{¶ 67} In *Maples*, the defendant's attorneys had failed to timely file a notice of appeal. In finding that Maples' attorneys had abandoned their representation of him, as opposed to merely being negligent, the Supreme Court noted that two of the attorneys had left the law firm, taken jobs that precluded their further representation of Maples, and failed to file motions to withdraw, thus providing no notice to the court as to where notices, orders, and the like were to be directed. In addition, Maples' third attorney never undertook to represent him, and was involved in the case only so that the other two attorneys could appear pro hac vice.

{¶ 68} By contrast here, the record is clear that appellant's prior attorneys did not abandon him, but instead were actively engaged in representing him both at trial and with

regard to his *Atkins* claim. Unlike in *Maples*, there is no evidence in the case at bar that appellant's prior attorneys had severed the principal-agent relationship. At most, appellant's claim only raises an issue of negligence, not abandonment. Accordingly, under the well-settled principles of agency law, appellant is bound by the acts and/or omissions of his prior attorneys.

### III. CONCLUSION

**{¶ 69}** In light of all of the foregoing, this court finds that the trial court did not abuse its discretion in denying appellant's Crim.R. 33(B) motion for leave to file a motion for new trial based on newly discovered evidence. Appellant's assignment of error is accordingly overruled.

**{¶ 70}** Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

M. Powell, P.J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Hendrickson, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Piper, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.